IN RE: JO. A.P., JE. A.P., and MA.A.A.[1]
No. COA08-816
Court of Appeals of North Carolina
Filed November 18, 2008
This case not for publication
Jess, Isenberg & Thompson, by Elva L. Jess, for Brunswick County Department of Social Services, petitioner-appellee.
Pamela Newell Williams, Guardian ad Litem Appellate Counsel, for guardian ad litem.
Assistant Appellate Defender Annick Lenoir-Peek for mother, respondent-appellant.
Richard E. Jester for father, respondent-appellant.
STEELMAN, Judge.
The trial court did not err in its determination that grounds existed to terminate respondents' parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) because its findings of fact were supported by clear, cogent and convincing evidence, resolved matters in material dispute, and supported the trial court's conclusion that the children continued to be neglected as defined in N.C. Gen.Stat. § 7B-101(15).

I. Factual and Procedural Summary
Jo.A.P., Je.A.P., and Ma.A.A. came into the custody of Brunswick County Department of Social Services (hereinafter "DSS") on 10 December 2005 when respondents failed to pick up Ma.A.A., an infant, from the hospital where he was born. On 1 February 2006, the children were adjudicated neglected. Reunification efforts continued throughout 2006 and into 2007. At the 13 February 2007 review hearing, the court changed the permanency plans for the children from reunification to adoption.
On 5 March 2007, DSS filed petitions to terminate the rights of the three parents.[2] Termination hearings were held on 16 January 2008, 23 January 2008, and 13 February 2008. Respondents' motions to dismiss the matter at the close of the petitioner's evidence were denied. On 21 April 2008, the court filed the subject orders in this matter. As to Jo.A.P. and Je.A.P., the court terminated mother's parental rights on the grounds set forth in N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2) and (a)(3). As to Ma.A.A., the court terminated mother's and father's parental rights on grounds of neglect, as set forth in N.C. Gen. Stat. § 7B-1111(a)(1). Mother appeals each of the orders. The father of Ma.A.A. (hereinafter "father") also appeals.

II. Standard of Review
Termination of parental rights proceedings is a two-step process involving an adjudication stage and a disposition stage. In re Nesbitt, 147 N.C. App. 349, 351, 555 S.E.2d 659, 661 (2001). In the adjudication stage, the petitioner must show by clear, cogent and convincing evidence that a statutory ground to terminate parental rights exists. In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). "This intermediate standard is greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." In re Montgomery, 311 N.C. 101, 109-110, 316 S.E.2d 246, 252 (1984) (citation omitted). "In cases involving a higher evidentiary standard, such as in the case sub judice, we must review the evidence in order to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." Id. at 111, 316 S.E.2d at 253 (citation omitted). However, it is the duty of the trial court "to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." In re Whisnant, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (citation omitted).

III. Analysis

A. N.C. Gen. Stat. § 7B-1111(a)(1)

1. Admissibility of Prior Orders
In their first argument, respondents contend that the trial court erred in including and relying upon prior orders from hearings with a lower evidentiary burden of proof, including evidence which contained inadmissible hearsay. We disagree.
Prior adjudicatory orders may be admitted and considered by the trial court in a termination of parental rights proceeding. In re Ballard, 311 N.C. 708, 713-14, 319 S.E.2d 227, 232 (1984). The court may incorporate by reference a prior adjudication order and may adopt its findings of fact. In re Reyes, 136 N.C. App. 812, 814-15, 526 S.E.2d 499, 501 (2000). Further, the court may consider all written reports and materials submitted in connection with juvenile proceedings. In re Ivey, 156 N.C. App. 398, 402, 576 S.E.2d 386, 390 (2003). The fact that the reports and materials may contain hearsay or other incompetent evidence does not warrant reversal. In re Huff, 140 N.C. App. 288, 301, 536 S.E.2d 838, 846 (2000), disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001). Where there is competent evidence to support the court's findings, it is presumed that, in making its findings, the court relied upon competent evidence and disregarded incompetent evidence. Id.
This argument is without merit.

2. Neglect of Ma.A.A.
In their second argument, appellants contend that the trial court erred in its determination that grounds for termination existed as set forth in N.C. Gen. Stat. § 7B-1111(a)(1) because the court's findings of fact lack evidentiary support and fail to support the conclusion that Ma.A.A. was neglected at the time of the proceedings. We disagree.

a. Predictive Nature of Neglect Determination
Parental rights may be terminated upon a finding "[t]he parent has abused or neglected the juvenile." N.C. Gen. Stat. § 7B-1111(a)(1) (2007). A neglected juvenile is defined by N.C. Gen. Stat. § 7B-101(15) as one:
. . . who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2007). Neglect may be established by a showing of "some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the [parent's] failure to `provide proper care, supervision, or discipline.'" In re Safriet, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (citations omitted).
When a child has been absent from the parent's home in the period immediately preceding the termination proceedings, "the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re McLean, 135 N.C. App. 387,396, 521 S.E.2d 121, 127 (1999). In In re Ballard, 311 N.C. 708, 319 S.E.2d 227 (1984), our Supreme Court stated the applicable standards as follows:
We hold that evidence of neglect by a parent prior to losing custody of a child  including an adjudication of such neglect _ is admissible in subsequent proceedings to terminate parental rights. The trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect. In re Wardship of Bender, 170 Ind. App. at 285, 352 N.E. 2d at 804. The determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the termination proceeding.
Id. at 715, 319 S.E.2d at 232. In addressing the issue of whether neglect exists at the time of the termination proceeding, the trial court should consider any evidence of changed conditions since the child has left parental custody and the probability of repetition of neglect. Id. at 716, 319 S.E.2d at 232-233 ("the answer to this ultimate question must be based upon the then existing best interests of the child and fitness of the parent(s) to care for it in light of any evidence of neglect and the probability of a repetition of neglect.").
In the instant case, the trial court incorporated by reference the prior orders entered in this matter. The children initially came into the custody of DSS on 10 December 2005 pursuant to a nonsecure custody order that involved allegations of neglect, domestic violence, and substance abuse concerns. On 1 February 2006, the court adjudicated Jo.A.P. and Je.A.P. as neglected, at least in part based upon mother's admission that the children's untreated skin conditions, for which mother had not sought or provided medical treatment, constituted medical neglect within the meaning of N.C. Gen. Stat. § 7B-101(15). On the same date, the trial court adjudicated Ma.A.A. as neglected and dependent, in part upon mother's admission that he did not receive proper care and lived in an environment injurious to his welfare. However, the record contains clear, cogent and convincing evidence that concerns of domestic violence fueled by mood-altering substances and mother's dependence upon men to support her children were conditions that led to the removal of the children in the home and the decision to place Ma.A.A. in foster care at the time of his discharge from the hospital.

b. Challenged Findings of Fact

i. Mother's Arguments Abandoned
Mother's primary arguments are that her parental rights were terminated because of poverty and that the trial court impermissibly shifted the burden of proof to require her to show that she would not neglect her children. Neither of these arguments corresponds to any of mother's assignments of error. Appellate review is "limited to the issues presented by assignments of error set out in the record on appeal; where the issue presented in the appellant's brief does not correspond to a proper assignment of error, the matter is not properly considered by the appellate court." Bustle v. Rice, 116 N.C. App. 658, 659, 449 S.E.2d 10, 11 (1994) (citation omitted). Additionally, these issues were not argued to the trial court. A party will not be allowed to raise an issue for the first time on appeal. In re Crawford, 134 N.C. App. 137, 142, 517 S.E.2d 161, 164 (1999). These arguments are dismissed.
Mother assigns error to findings of fact 32, 51-52, 56-57, 63, 65-66, 68, and 70-73, but insofar as she does not bring forward those assignments of error in her brief, they are deemed abandoned. N.C. R. App. P. 28(b)(6)(2007). Mother further argues that, because DSS exhibits 10-13 were contradictory, they may not be considered as competent evidence supporting the court's findings. Evidentiary contradictions are to be resolved by the factfinder, Whisnant, 71 N.C. App. at 441, 322 S.E.2d at 435, and not by this Court. We hold that the trial court's findings of fact, as to mother, are binding upon this Court, Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991), and limit our analysis to those findings challenged by father.

ii. Father's Challenged Findings of Fact
Father challenges findings of fact 23, 24, 26, 29-31, 33-37, 39, 42-50, 55-56, 58-60, 62, and 64-73 as unsupported by clear, cogent and convincing evidence.[3]
As noted above, the record in this case reflects serious concerns about the welfare and safety of the children in their home environment prior to coming into DSS custody. Such concerns are properly considered, McLean, 135 at 396, 521 S.E.2d at 127, when they pose a "substantial risk of impairment as a consequence of the[parent's] failure to `provide proper care, supervision, or discipline.'" Safriet, 112 N.C. App. at 752, 436 S.E.2d at 901-02. Regarding the non-secure custody order that resulted in Ma.A.A.'s removal, finding of fact 33 stated that:
With regard to the petition filed in the case of MAAA, the petition was filed December 9, 2005 alleging that the child was a neglected juvenile in that he did not receive the proper care, supervision, or discipline from [his] parent/guardian or custodian and lived in an environment injurious to the juvenile's welfare. . . . [A]t . . . birth, [Ma.A.A.] had cardiac health problems requiring use of certain medical equipment and treatment by a cardiologist. . . . [R]equired training on the use of the equipment by the parent/guardian or custodian . . . required a consecutive 24 hour period of stay at the hospital, scheduled to begin on December 5, 2005. The parents failed to appear at the training until December 7, 2005 without notifying hospital staff. The parents provided a false address preventing prescribed follow-up in home health and medical care . . . . The petition also alleged a history of domestic violence as indicated in the petitions filed with regards to the other children.
Finding of fact 33 is supported by the social worker's testimony and petitioner's exhibits. We hold that domestic violence concerns, substance abuse concerns, and concerns regarding mother's dependence upon men to support her children were conditions that led to the loss of custody of the children.
As part of his case plan to which he agreed on 1 February 2006, Father was required to complete parenting classes, provide information regarding a substance abuse assessment, refrain from the use of alcohol in his home, participate in anger management classes, maintain safe and stable housing, refrain from engaging indomestic violence, provide proof of employment, provide the social worker with a budget, and schedule a home visit with the social worker so she could examine the suitability of his residence for the children. Father had attended only one half of the scheduled visitations with Ma.A.A.[4] Father admitted that the two-bedroom residence he shared with three other men is not a suitable residence for Ma.A.A., but stated that he did not have time to look for another residence due to working six days per week. Father completed a parenting class but there is no evidence that it contained an anger management component. Father failed to provide information regarding a substance abuse assessment, failed to provide information to permit DSS to determine whether he maintained safe and stable housing, failed to provide information about individuals living in his home, failed to provide proof of employment, failed to provide a budget, and failed to schedule a home visit with the social worker. In relevant part, the trial court found that:
71. The parents have participated in review hearings and permanency planning hearings when the court has addressed the objectives that must be met in order to effect reunification. The parents were made aware of the goals and objectives that they must comply with [sic] in order to secure a return of the child to their care. . . . [T]hey did not meet those objectives.
72. Although [respondents] have been gainfully employed and completed parenting classes, they have not been able to demonstrate consistency with regard to the terms and conditions of the Family Services Case Plan and have never fulfilled the requirements of the plan necessary to return the child to their physical custody for even unsupervised visits. . . .
In the absence of unsupervised visits, the court is left with only the historical and contextual facts of the conditions that brought the children into care and interactions with the parents during supervised visitation and home visits. Since the children had come into care, mother had agreed to have no contact with father because of domestic violence concerns. Yet twice within a three month period, mother appeared for visitation with fresh injuries:
39. . . . On January 25, 2006 [mother and father] visited with MAAA at [DSS]. . . . [M]other had a freshly injured eye which she explained that she got [sic] trying to separate some men at the trailer park, [and] that the fight included [father]. [Father] had no signs of injury on his body. On April 19, 2006, the mother showed up for a visit with JOAP and JEAP . . . . The side of her face was swollen. She had a small bruise on her cheek and cuts on her hand with bandages. [Mother attributed] the swelling to a "toothache" and the cut on her hand while cooking [sic]. Later she reported that the cuts from [sic] laying tile at work. . . .
The August 2006 case plan required separate sleeping areas for the two elder children "due to observed sexual acting out[.]" At the February 2007 review hearing, mother still did not have appropriate sleeping arrangements for the children, and she had recently appeared with fresh injuries from a fight that involved father. It was at this hearing that the permanency plans for the children were changed from reunification to adoption. Following this hearing, there were two other review hearings prior to the termination hearings. Mother attended the June 2007 hearing but did not attend the November 2007 hearing. On both occasions, she reported a new residence but could not provide an address or directions and no home study was ever completed. She had changed jobs multiple times.
Although respondents challenge the scope of the case plans as too broad for the medical neglect issues that were stated in the 2006 adjudication orders, they do not challenge the domestic violence and substance abuse concerns documented in the original petitions. Rather, they argue that those concerns were addressed by their participation in parenting classes and evidence that they were no longer living together. They further assert that there was no competent evidence regarding alcohol, which was alleged to be a precipitating factor in the domestic violence. Regarding these concerns, the trial court found that:
66. In every home that the social worker visited, there were beer bottles, beer boxes, and beer cans in the trash cans. [Mother] informed [the social worker] that [father] drank quite a bit and that this led to domestic violence.
. . .
69. In February 2006, [mother] had to call 911 because [father] was being mean. In January 2007, [mother] left a message on [the social worker's] voice mail that she had called polic[e] because [father] would not leave her residence. On another occasion, in January 2006, [mother] suffered injury to her face as a result of attempting to break up a fight between others at her residence.
There was also evidence before the trial court that the bills that mother provided in support of her monthly expenses were in the name of another individual, appearing to be male. These findings, supported by competent evidence, demonstrate a continuing pattern of unhealthy and dysfunctional conduct by respondents that posed a substantial risk of harm to children "as a consequence of the [parent's] failure to `provide proper care, supervision, or discipline.'" Safriet, 112 N.C. App. at 752, 436 S.E.2d at 901-02.
Father also challenges certain findings of fact on the ground that they are not actually findings of fact but recitations of evidence at hearings with a lower evidentiary standard. This argument is unavailing. An "adjudicatory order shall be in writing and shall contain appropriate findings of fact and conclusions of law." N.C.G.S. § 7B-807(b) (2005). The court's findings in an adjudicatory order "must be more than a recitation of allegations[]" and must include sufficient ultimate facts for this Court to determine whether the order is supported by evidence. In re Anderson, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002). "Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts."Woodard v. Mordecai, 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951). "An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts." Id. at 472, 67 S.E.2d at 645 (citations omitted). "There is nothing impermissible about describing testimony, so long as the court ultimately makes its own findings, resolving any material disputes." In re C.L.C., 171 N.C. App. 438, 446, 615 S.E.2d 704, 708 (2005), aff'd per curiam and disc. review improvidently allowed, 360 N.C. 475, 628 S.E.2d 760 (2006).
We have examined the challenged findings of fact and conclude that there is clear, cogent and convincing evidence in the record to support the court's evidentiary findings, including findings of fact 46, 48, 52, 57, 60, 65, 66, 67, 69, 70, 71, and 72. Many findings refer to prior orders entered in this matter, as well as case reports and evaluations prepared and conducted by the social worker, all of which are evidentiary facts. After noting these evidentiary facts, the court then made an ultimate finding of fact:
73. That [Ma.A.A.] continues to be a neglected child in that his parents have failed to successfully effect a reunification with the juvenile, or to follow plans developed . . . for said purpose, and have failed to improve conditions leading toward a return of the juvenile to their care. There has been continued evidence of alcohol around [mother's] home, she has moved on a number of occasions and did not or could not provide [DSS] with her address or directions to her home, she failed to notify [DSS] of the location so that [DSS] could verify its suitability as a residence for the child, the lease recently provided specifies that it is available only for one other individual. [Father], on his own testimony, does not have a suitable residence for his child and has not had the time in two years to find a suitable residence. . . . At the time of the termination hearing, the evidence was insufficient to show that the child's parents were in a position to provide for the safe care of the minor child and had not made progress that would allow unsupervised visitation. That [Ma.A.A.] continues to be a neglected juvenile as defined by N.C.G.S. 7B-101(15). . . .
We hold that finding of fact 73 resolves the matters in material dispute, C.L.C., 171 N.C. App. at 446, 615 S.E.2d at 708, and is supported by evidentiary findings of fact 46, 48, 52, 57, 60, 65, 66, 67, 69, 70, 71, and 72.
We note parents' contention that the last evidence of alcohol or domestic violence predated the termination hearings by months and is therefore irrelevant. This argument is unavailing in light of their failure to provide DSS with notice of changes in residence or information that would have allowed DSS to complete a home study at a new residence.

c. Conclusions of Law
Respondents assert that the trial court erred by concluding that grounds existed to terminate their parental rights under N.C. Gen. Stat. § 7B-1111(a)(1). Mother contends that the trial court improperly required her "to show that she would not neglect her children in the future, instead of placing the burden on DSS [to show] that she would neglect the children in the future." Father argues that DSS failed to prove that removal was still necessary because Ma.A.A.'s needs can be adequately, if minimally, met in his parents' care. Father further argues that the trial court improperly considered the best interests of the children "in lieu of the true standard of neglect."
Pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (2005), a trial court may terminate parental rights upon a finding that "[t]he parent has . . . neglected the juvenile. The juvenile shall be deemed to be . . . neglected if the [trial] court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101." Under N.C. Gen. Stat. § 7B-101(15) (2005), a neglected juvenile is defined as, inter alia, "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker[.]" "[E]vidence of abuse of another child in the home is relevant in determining whether a child is a neglected juvenile." In re Nicholson, 114 N.C. App. 91, 94, 440 S.E.2d 852, 854 (1994).
Having determined that the trial court's findings of fact were supported by clear, cogent and convincing evidence, we determine whether those findings support the trial court's conclusion that "grounds exist for the termination of parental rights of [mother] and [father] pursuant to N.C.G.S. 7B-1111(a)(1)[.]" The trial court found that domestic violence and substance abuse concerns, as well as concerns of medical neglect, led to the removal of Ma.A.A. and his siblings from parental custody. The trial court further found that the parents participated in case planning and were aware of the objectives that must be achieved and the requirements to be satisfied in order to effect reunification. The trial court then found that the parents failed to address those concerns by complying with their case plans or fulfilling those requirements to a degree that would permit unsupervised visitation. The trial court included in its findings the circumstantial evidence of continued alcohol use from which it could reasonably infer continued risk of domestic violence and a substantial risk of impairment to children. These findings indicate that the trial court considered whether or not conditions had changed since the children's removal from respondents' custody and the likelihood of repetition of neglect. Ballard, 311 at 715-16, 319 S.E.2d at 232-233.
We hold that these findings support a conclusion that Ma.A.A. continued to be neglected as defined in N.C. Gen. Stat. § 7B-101(15) and, thus, grounds to terminate their parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) existed.
These arguments are without merit.

3. Neglect of Jo.A.P. and Je.A.P.
Having determined that the trial court properly concluded that grounds existed to terminate mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), we affirm its order as to Jo.A.P. and Je.A.P. for the same reasons.

B. Sufficiency of the Pleadings
In her third argument, mother contends that the petitions do not adequately allege the asserted grounds for terminating parental rights. We disagree.
The record shows that respondents made motions at the close of the State's evidence to dismiss the petitions on two grounds. First, respondents moved to dismiss the petitions under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. Second, respondents challenged the sufficiency of the State's evidence, arguing that the State had failed to present clear, cogent and convincing evidence that grounds existed to terminate their parental rights. The court denied all six motions.
A petition to terminate parental rights must state "[f]acts that are sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist." In re Quevedo, 106 N.C. App. 574, 579, 419 S.E.2d 158, 160 (1992); N.C. Gen. Stat. § 7B-1104(6) (2007). The factual allegations need not be extensive, but must be sufficient to put a respondent on notice regarding the acts, omissions, or conditions at issue in the petition. In re Hardesty, 150 N.C. App. 380, 384, 563 S.E.2d 79, 82 (2002). The petition in the instant case alleged that the children continued to be neglected in that Mother had failed to cooperate with reunification plans, had failed to provide for the needs of the children, and had shown little progress toward reunification. We hold that these allegations, which referenced reunification plans with detailed goals and expectations agreed to by respondent, were sufficient to give notice regarding mother's acts and omissions and the conditions at issue. Hardesty, 150 N.C. App. at 384, 563 S.E.2d at 82.
We further note that the well-settled rule in this State is that the denial of a motion to dismiss is not reviewable on appeal when there is a final judgment on the merits.Concrete Service Corp. v. Investors Group, Inc., 79 N.C. App. 678, 682-83, 340 S.E.2d 755, 758-59, cert. denied, 317 N.C. 333, 346 S.E.2d 137 (1986). See also Pierce v. Reichard, 163 N.C. App. 294, 297, 593 S.E.2d 787, 789 (2004); Shadow Grp., LLC v. Heather Hills Home Owners Ass'n, 156 N.C. App. 197, 199, 579 S.E.2d 285, 286 (2003); Berrier v. Thrift, 107 N.C. App. 356, 359, 420 S.E.2d 206, 208 (1992); Shingledecker v. Shingledecker, 103 N.C. App. 783, 786-87,407 S.E.2d 589, 591 (1991); Drain v. United Services Life Ins. Co., 85 N.C. App. 174, 176, 354 S.E.2d 269, 271 (1987); Duke University v. Stainback, 84 N.C. App. 75, 77, 351 S.E.2d 806, 807 (1987); In re Baby Boy Shamp, 82 N.C. App. 606, 612, 347 S.E.2d 848, 851-52 (1986). This line of cases is based on our Supreme Court's decision in Harris v. Walden, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985), which held the denial of a motion for summary judgment was not appealable following a trial on the merits. It is only in the context of termination proceedings that this Court has deviated from this well-established line of cases. Hardesty, 150 N.C. App. at 384, 563 S.E.2d at 82 (reversing termination on the basis that the petition failed to allege "any facts to delineate parental incapacity" sufficient to give notice as to the acts, omissions or conditions at issue).
This argument is without merit.

IV. Conclusion
Having upheld the determination of one ground to terminate respondents' parental rights, we need not consider the sufficiency of the evidence to support the findings in support of the other two grounds. In re B.S.D.S., 163 N.C. App. 540, 546, 594 S.E.2d 89, 93 (2004). The orders of the trial court are
AFFIRMED.
Chief Judge MARTIN and Judge ELMORE concur.
Report per Rule 30(e).
NOTES
[1] Although the record on appeal lists the juveniles as "J.P.A.," "J.P.A.," and "M.A.A.A.", the trial court's orders are captioned "JO.A.P.," "JE.A.P.," and "MA.A.A."
[2] Respondent mother is the mother of all three children. Respondent father is the father of Ma.A.A. The father of the two older children is not a party to this appeal.
[3] Father's assignments of error state that these findings are "not based on sufficient evidence proven to the required standard."
[4] Father worked six days a week, DSS had prohibited him from driving, and visitation was scheduled mid-afternoon on a weekday.