IN THE MATTER OF: DANIEL RAY SAFRIET, A MINOR

No. 9219DC1303

(Filed 7 December 1993)

1. **Trial § 3.2 (NCI3d) — continuance denied — no abuse of discretion**
    The trial court did not abuse its discretion in denying respondent's request for a continuance of a hearing on the merits as to whether her child was neglected under N.C.G.S. § 7A-517(21) and in need of the care, protection, or supervision of the State where respondent had notice on 6 January that the hearing on the merits would take place on 24 February; respondent's trailer burned down around 3 February and she had no residence thereafter; and respondent did not contact her attorney from 6 January until 19 February.
    **Am Jur 2d, Continuance §§ 4, 5.**

**2. Parent and Child § 130 (NCI4th) — child adjudicated as neglected juvenile — sufficiency of evidence**

The trial court did not err in adjudicating respondent's child as a neglected juvenile where the court found that the child was in a filthy condition and was made fun of by other children because of his uncleanliness; the mother was without a permanent residence; the grandparents and his residential school for the deaf did not know how to contact the mother in case of emergency; the mother had refused to enroll the child in the residential program so that he could learn proper hygiene skills; and the mother had only minimal contact with her son after his placement in the residential program. N.C.G.S. § 7A-517(21). .

**Am Jur 2d, Parent and Child §§ 34, 35.**

On writ of certiorari to review the order entered 28 February 1992 in Randolph County District Court by Judge Vance Bradford Long. Heard in the Court of Appeals 28 October 1993.

*Theresa A. Boucher for petitioner-appellee Randolph County Department of Social Services.*

*James G. Ligon, Jr. for respondent-appellant.*

GREENE, Judge.

Iris Safriet (Ms. Safriet) petitioned this Court for review of a 28 February 1992 order denying her motion to continue, adjudicating her son, Daniel Ray Safriet (Daniel), as neglected, and awarding custody of him to Randolph County Department of Social Services (DSS).

On 30 December 1991, DSS filed a petition to determine whether Daniel is neglected under N.C. Gen. Stat. § 7A-517(21) or, in the alternative, dependent within N.C. Gen. Stat. § 7A-517(13) and whether he is in need of the care, protection, or supervision of the State. Based on this petition and pursuant to N.C. Gen. Stat. § 7A-574(a), the court ordered DSS to assume custody of Daniel for a maximum duration of five days. At a preliminary hearing on 3 January 1992 pursuant to N.C. Gen. Stat. § 7A-577, the court ordered legal custody to remain with DSS and authorized placement in the North Carolina School for the Deaf in Greensboro's (the School) residential program and placement at Daniel's maternal

grandparents' home for weekend visitations. The court also appointed a guardian ad litem and attorney advocate.

After a seven day hearing pursuant to Section 7A-577, the court, on 6 January 1992, ordered that legal custody be awarded to Ms. Safriet, Daniel be enrolled in the residential program, and DSS monitor the case until the hearing on the merits, which was held pursuant to Section 7A-577 on 20 February 1992. At that time, Ms. Safriet moved for a continuance without prior notice of the motion because her trailer was destroyed by fire on 3 February 1992, leaving her without a permanent residence, and she had no contact with her attorney from 6 January to 19 February 1992.

On 28 February 1992, the trial court, denying her motion, stated that "there was nothing to prevent [Ms.] Safriet from contacting [her attorney] prior to [19 February 1992] but after the fire of her trailer . . . to request a continuance so as not to inconvenience the witnesses or the [trial] Court. The [trial] Court notes that this was not done; finds there's no reason to continue this case." The trial court then proceeded to adjudicatory and dispositional hearings on the merits.

The undisputed evidence is as follows: Daniel, born hydrocephalic, is a developmentally delayed and profoundly hearing impaired fourteen year old who attended the School as a day student for eleven years. As a day student, he appeared regularly with unwashed hair, filthy underwear, unclean body, dirty clothing, and foul smelling. On occasion, the teachers would be forced to bathe him in the dormitories and wash his clothing so that the other children did not complain and make fun of him. Ms. Sylvia Belbin (Ms. Belbin), a social worker at the School, testified "other children were making fun or laughing or saying something about Danny smelling bad."

Daniel showed little comprehension of bathing skills, daily living skills, or routine hygiene prior to enrolling in the residential program, which fosters social growth and assists students in development of independent, leisure, and daily living skills, including bathing, cleaning clothes, using deodorant, and brushing teeth. The School repeatedly requested that Ms. Safriet bring Daniel to School washed and with clean clothing, resulting in his appearing at School clean for one or two days; however, shortly after the request, he would again appear in a filthy condition. Ms. Safriet did not want Daniel in the residential program and refused to

enroll him. Ms. Belbin testified that Daniel "needs a lot of structure . . . . He flourishes in routines." If the structure of the residential program were not there, Ms. Belbin thinks "it would be a repeat of what we've seen for many years, a child coming to school dirty, unkept [sic] clothes with dirty hair, dirty body." Furthermore, at the time DSS filed its petition to determine whether Daniel was neglected, Daniel and Ms. Safriet resided in her trailer which was extremely cluttered, had no electricity, and several broken windows.

Since the hearing on 6 January 1992, Ms. Safriet has transported Daniel to and from the School on Fridays and Sundays. Immediately after the hearing on 6 January 1992, she placed Daniel in her parents' home for weekend visitations. She spent a limited amount of time with Daniel on the weekends, and since 6 January 1992, Ms. Safriet's parents have been exclusively responsible for caring for Daniel outside of the residential program. She was called once by her parents in response to Daniel's becoming ill, and Daniel and his grandparents waited approximately one hour for her to arrive in order for Daniel to obtain medical attention. She has also failed to provide the School or DSS with information on how to reach her in case of an emergency. Ms. Belbin testified that "[w]e've had a real difficult time even when Danny was with the mother and not in a residential program reaching her during the day. Sometimes she would bring Danny to school and he would be sick and we'd need to contact her and we would call all over the world, everybody's number that we knew, and we'd have a hard time reaching her. So, we have a real difficult time · now because she doesn't have a residence that we know of," and "if we needed to take him for emergency surgery or something like that I don't know what we'd do because we do not know how to get in touch with her." In addition, Daniel's maternal grandmother testified that Ms. Safriet cannot do the best she can for Daniel right now because she has "no home to take him to."

Daniel is thriving in the residential program and is making marked progress in daily living skills, communication skills, self help hygiene skills, and social skills. Daniel enjoys living in the dormitory and expresses his desire and wish to return to the dormitory and live in the residential program.

Based on this undisputed evidence, the court concluded that Daniel was a neglected juvenile pursuant to N.C. Gen. Stat.

§ 7A-517(21) "in that the Juvenile does not receive proper care from his parent" and placed him in the custody of DSS, with placement at the School. A further order on 30 March 1992, pursuant to N.C. Gen. Stat. § 7A-668, continued legal custody with DSS pending appeal in this Court. Due to Ms. Safriet's failure to perfect the record on appeal, she filed a petition for writ of certiorari on 5 October 1992 which was allowed by this Court on 23 October 1992.

---

The issues presented are whether the trial court erred in (I) denying Ms. Safriet's motion for a continuance where she failed to contact her attorney from 6 January 1992 to 18 February 1992, and the hearing date was set for 24 February 1992; (II) adjudicating Daniel as a neglected juvenile pursuant to N.C. Gen. Stat. § 7A-517(21) because Daniel's physical, emotional, or mental well-being was impaired or in danger of being impaired due to Ms. Safriet's improper care; and (III) awarding legal custody of Daniel to DSS after adjudicating him to be a neglected juvenile.

I

[1] Generally, the denial of a continuance, which is within the trial court's sound discretion, will not be interfered with on appeal; however, if the ruling is "manifestly unsupported by reason," it is an abuse of discretion and subject to reversal. *Freeman v. Monroe*, 92 N.C. App. 99, 101, 373 S.E.2d 443, 444 (1988). Before ruling on a motion for a continuance, the judge should hear the evidence, pro and con, consider it judicially, along with whether the moving party has acted with diligence and in good faith and then rule with a view to promoting substantial justice. *Shankle v. Shankle*, 289 N.C. 473, 483, 223 S.E.2d 380, 386 (1976). N.C. Gen. Stat. § 7A-632 directly addresses the issue of continuances for a hearing involving a juvenile matter:

> The judge may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interest of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the

proper administration of justice or in the best interest of the juvenile.

N.C.G.S. § 7A-632 (1989).

Nothing in the record indicates that the court requested or needed additional information in the best interests of Daniel, or that more time was needed for expeditious discovery. Therefore, the question is whether these facts support the conclusion that extraordinary circumstances necessitating a continuance are not present in this case. The evidence before the trial court was that Ms. Safriet, whose trailer burned down around 3 February 1992, had not contacted her attorney from 6 January 1992 until 19 February 1992, a period of 45 days, despite a 24 February 1992 hearing date set on 6 January 1992. Because these facts did not present extraordinary circumstances warranting a continuance, the trial court's decision to deny Ms. Safriet's motion for a continuance was not "manifestly unsupported by reason," and the trial court did not abuse its discretion in denying her motion.

II

[2] N.C. Gen. Stat. § 7A-517(21), in relevant part, as it read at the time of this trial, defined a neglected juvenile as:

[a] juvenile who does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker;

N.C.G.S. § 7A-517(21) (1989). This statute was amended by the 1993 General Assembly; however, the above quoted portion of the statute was not altered. N.C.G.S. § 7A-517(21) (Supp. 1993). The statute is silent on whether the juvenile, to be neglected, must sustain some injury as a consequence of the failure to provide "proper care, supervision, or discipline." Nonetheless, this Court has consistently required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide "proper care, supervision, or discipline." *In re Thompson*, 64 N.C. App. 95, 101, 306 S.E.2d 792, 796 (1983); *see In re Huber*, 57 N.C. App. 453, 458, 291 S.E.2d 916, 919, *disc. rev. denied*, 306 N.C. 557, 294 S.E.2d 223 (1982) (failure of the parent to provide treatment which could cause the juvenile to "suffer emotionally" sufficient to support neglect); *In re Evans*, 81 N.C. App. 449, 452, 344 S.E.2d 325, 328 (1986) (neglect where mother's inability to maintain secure living

arrangements exposed child to substantial risk of physical injury in future); *In re Devone*, 86 N.C. App. 57, 60, 356 S.E.2d 389, 391 (1987) (parent's denial of mentally retarded child's right to attend special education classes critical to the child's development and welfare sufficient for neglect and lack of proper care). This is consistent with the authority of the State to regulate the parent's constitutional right to rear their children, *Meyer v. Nebraska*, 262 U.S. 390, 67 L. Ed. 1042 (1922), only when "it appears that parental decisions will jeopardize the health or safety of the child." *Wisconsin v. Yoder*, 406 U.S. 205, 233-34, 32 L. Ed. 2d 15, 35 (1972).

In this case, the findings of fact reveal that Ms. Safriet failed to provide proper care for Daniel in that she regularly left him at the School in a filthy condition, she refused to enroll him in the residential program so that he could learn proper hygiene skills, she and Daniel, at the time of the filing of the petition, resided in an extremely cluttered trailer with no electricity and several windows broken out, she had no permanent residence at the time of the hearing, she had only minimal contact with Daniel after his placement in the residential program, she failed to provide DSS or the School with information on how to reach her in an emergency, and she provided no care for her son since his placement with her parents.

Although the trial court failed to make any findings of fact concerning the detrimental effect of Ms. Safriet's improper care on Daniel's physical, mental, or emotional well-being, all the evidence supports such a finding. *See Harris v. N.C. Farm Bureau Mutual Ins. Co.*, 91 N.C. App. 147, 150, 370 S.E.2d 700, 702 (1988) (remand because of inadequate findings of fact unnecessary where facts are undisputed and only one inference can be drawn from undisputed facts). The findings of fact that Daniel was in a filthy condition, other children made fun of him due to his uncleanliness, Ms. Safriet is without a permanent residence, and Daniel's grandparents and the School do not know how to contact Ms. Safriet in case of an emergency show that Daniel's physical, emotional, or mental well-being was impaired or in substantial risk of becoming impaired as a result of improper care. The testimonies of Ms. Belbin and Daniel's grandmother support this conclusion. For these reasons, the trial court did not err in adjudicating Daniel as a neglected juvenile under Section 7A-517(21).

## III

In selecting an appropriate disposition, the trial court must "design an appropriate plan to meet the needs of the juvenile . . . [and] the initial approach should involve working with the juvenile and his family in their own home . . . ." N.C.G.S. § 7A-646 (1989). This record supports the determination by the trial judge that the needs of Daniel were best met in the School, that they could not be met at home, and that to insure his presence in the School, custody should be given, as specifically authorized in N.C. Gen. Stat. § 7A-647, to DSS.

For these reasons, the trial court did not err in denying Ms. Safriet's motion to continue, in adjudicating Daniel as a neglected juvenile, and in awarding custody to DSS.

Affirmed.

Judges MARTIN and JOHN concur.