An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-210

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

IN THE MATTER OF:

K.C., H.C., C.C., S.C.                    Edgecombe County
                                          Nos. 12 JA 59-62

Appeal by Respondent-Mother from orders entered 16 July 2013 by Judge William C. Farris and 29 October 2013 by Judge William G. Stewart in District Court, Edgecombe County. Heard in the Court of Appeals 8 July 2014.

> *Lawrence, Best & Associates, P.A., by Natarlin R. Best, for Petitioner-Appellee Edgecombe County Department of Social Services.*
>
> *Edward Eldred for Respondent-Appellant Mother.*

McGEE, Judge.

Respondent-Mother ("the Mother") appeals from orders adjudicating her four children ("the children") neglected and continuing legal custody of the children with the Edgecombe County Department of Social Services ("DSS"). We affirm.

This is the second appeal in this matter. DSS became involved in 2011 with the Mother, her husband ("the stepfather"), and the children when DSS received a report that the Mother had been criminally charged with "stealing pills from a woman in Franklin County and had sped away with two of the children and [the stepfather] in the car." At the time, the Mother, the stepfather, and the children (collectively, "the family") were living with the stepfather's parents. DSS found the family to be in need of services due to substance abuse and an injurious environment. The Mother entered into a safety plan pursuant to which the family would reside at the home of the stepfather's parents and the children would be supervised at all times by the stepfather's parents.

DSS filed a petition alleging that the children were neglected and dependent on 21 February 2012. DSS alleged that the Mother and the stepfather lacked housing of their own; that the Mother and the stepfather abused prescription drugs and used marijuana daily; that the Mother and the stepfather engaged in acts of domestic violence; that the children did not attend school regularly while under the Mother's care; and that the Mother did not comply with the safety plan when she took the children to the State of Virginia.

The Mother moved out of the stepfather's parents' home on 17 April 2012, at which time the stepfather's parents were no longer willing to provide care for the children and requested that the children be removed by 24 April 2012. At the Mother's request, the children were placed with the Mother in the home of a relative. The children remained in the home of the relative until the relative was arrested for trafficking narcotics on 10 may 2012, and DSS placed the children in a licensed foster home.

The trial court held a hearing on the petition on 26 June 2012. By an amended adjudication and disposition order entered 20 September 2012, the trial court adjudicated the children neglected and continued placement of the children in foster homes. The Mother appealed, arguing, in part, that the trial court's findings of fact were insufficient to support its conclusion that the children were neglected. This Court reversed the adjudication and disposition order, and remanded the case for further action. *In re K.C.*, ___ N.C. App. ___, 745 S.E.2d 375 (2013) (unpublished).

Upon remand, the trial court entered an order on 16 July 2013, adjudicating the children neglected. In a separate disposition order, the trial court concluded it was in the best interest of the children that they remain in the legal custody

of DSS. The trial court ordered that DSS be relieved of unification efforts with the Mother and with the natural father of the children. The Mother appeals.

The Mother contends the trial court erred in concluding that her children were neglected juveniles. We disagree.

This Court has stated that: "The purpose of abuse, neglect and dependency proceedings is for the court to determine whether the juvenile should be adjudicated as having the status of abused, neglected or dependent." *In re J.S.*, 182 N.C. App. 79, 86, 641 S.E.2d 395, 399 (2007). Accordingly, the role of this Court in reviewing a trial court's adjudication of neglect and abuse is to determine "(1) whether the findings of fact are supported by 'clear and convincing evidence,' and (2) whether the legal conclusions are supported by the findings of fact." *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000)(citations omitted). If this evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary. *In re McCabe*, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003).

A neglected juvenile is one "who does not receive proper care, supervision, or discipline" from a parent or caretaker, or "who lives in an environment injurious to the juvenile's

welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2013). This Court has held that an adjudication of neglect requires "that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline." *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (internal quotation marks omitted).

To support its conclusion that the children were neglected in that they lived in an environment injurious to their welfare, the trial court made the following pertinent findings of fact:

> 5. The [M]other [] and [the stepfather] are addicted to prescription pain medication and used said drugs and marijuana daily while caring for the children. They are not employed and rely upon [the stepfather's parents] for food, shelter, and clothing for themselves and the minor children.
>
> 6. The [M]other took at least one of the children with her on several occasions to hospital emergency rooms in Nash and Wilson Counties complaining of kidney stones and seeking pain medication. While at the Nash emergency room with her one year old child, [Respondent] fell asleep.
>
> 7. On September 9, 2011, the [M]other drove with the stepfather and [Mr. P.] and with the children [K.C.] and [S.C.] to the Family Dollar store in Castalia, N.C. to purchase stolen prescription drugs. The [M]other was arrested on criminal charges involving the stolen drugs, but the charges were later dismissed.

8. The stepfather [] also abused pain medication and sold the family's food stamps to obtain said drugs. The [stepfather] also used the children's Attention Deficit Disorder medications recreationally.

9. Prior to moving into the home of [the stepfather's parents], the [M]other failed to have her children attend school regularly. The three older children have a history of excessive absences. With the help of [the stepfather's parents], the children were properly clothed and well-nourished, and they attended school regularly[.]

10. In September, 2011, the [M]other agreed on a safety plan with Edgecombe County Department of Social Services to address the needs of her children which included drug treatment for the [M]other; not leaving the children alone with the [M]other and [the stepfather]; and living with the children in [the stepfather's parents'] home. But the [M]other failed to appear for appointments with her caseworker; failed a drug screen; failed to take several drug screens; attended drug counseling sporadically; moved with the children to Virginia without notice to DSS or [the stepfather's parents] in December, 2011 with no firm plans for housing there; and did not enroll the children in school in Virginia. Mr. [D.] went to Virginia on December 15, 2011 and brought the children and the [M]other back to his home.

11. The [M]other exhibited extreme mood swings in the presence of her caseworker and her children. She was cordial and cooperative at times but angry, cursing, crying, shaking, and nauseated at other times. The [M]other reported to the

> Department of Social Services that she was
> in physical discomfort from drug withdrawal.

The Mother challenges the portion of finding of fact 10 that she "moved with the children to Virginia without notice to DSS or [the stepfather's parents] in December, 2011 with no firm plans for housing there[.]" The Mother asserts the evidence shows that DSS and the stepfather's parents were given notice and that she had plans for housing.

The Mother is correct that she called a DSS investigator on the day she was moving to Virginia and gave the investigator "an address that [the Mother] would be moving to and a phone number that [the Mother] could be contacted with[.]" The DSS social worker assigned to the family testified that she initially received information from the stepfather's mother, but explained to her that it would be better if she could hear from the Mother, "[a]nd then [the Mother] did contact [the social worker] and leave a contact number." There is no direct testimony from the stepfather's parents concerning the notice to them from the Mother of her move to Virginia. However, the social worker testified she initially received information about the Mother's move to Virginia from the stepfather's mother and only later from the Mother. While the Mother did make contact with DSS and

the stepfather's parents, she failed to provide a "specific plan for the safety of the children."

The social worker also testified (1) that the agency was concerned because the Mother had uprooted the children "with no specific plan for the safety of the children[,]" and (2) the Mother had returned to North Carolina after a few days because "she had nowhere to stay[.]" As to housing, the social worker also testified the Mother first took the children to the residence of her mother and then to the residence of her cousin; however, at neither location was there any place available for the Mother and the children. We therefore conclude that, while the Mother did make contact with DSS and the stepfather's parents, it was more important for the well-being of the children that she provide a specific plan for the safety of the children, and she failed to do so. The portion of finding of fact 10 challenged by the Mother is supported by the evidence.

The Mother also contends the trial court erred in adjudicating her children neglected because the findings failed to establish a risk of harm to the children. While it is generally true that findings of actual or substantial risk of harm are necessary to support an adjudication of neglect, this Court has held that an adjudication lacking such findings may

nonetheless be affirmed when "all the evidence supports such a finding." *Safriet* at 753, 436 S.E.2d at 902.

In this case, the enumerated findings of fact show that the Mother lacked stable housing and income, abused marijuana and prescription drugs, engaged in domestic violence, and did not properly supervise the children's school attendance. Further, the Mother disregarded the safety plan to the detriment of her children's well-being by removing them from school in mid-December and taking them to Virginia. The trial court's findings demonstrate an injurious environment which had the effect of placing the children at substantial risk of physical or emotional impairment. As a result, we affirm the trial court's determination that the children were neglected juveniles.

Affirmed.

Judges STEELMAN and ERVIN concur.

Report per Rule 30(e).