McGEE, Chief Judge.
Respondent-Appellant Father ("Father") appeals from an adjudication and disposition order, which adjudicated that his daughter, A.L.T. ("the Child"), was abused and neglected. We reverse.
I. Background
The Yadkin County Human Services Agency ("YCHSA") filed a juvenile petition on 10 July 2014, alleging that the Child, who was two years old at the time, was an abused and neglected juvenile ("the petition"). YCHSA had received a Child Protective Services report the prior day concerning the Child. The report indicated that, on 8 July 2014, witnesses at a Dollar General store in Boonville ("the Dollar General store") observed Father pulling the Child by her hair for several feet, cursing at her, and spanking her ("the incident"). The incident also was captured on the Dollar General store's security cameras.
Boonville Police Officer Bryan Rutledge ("Officer Rutledge") was called to investigate the incident shortly after it occurred. He watched the security footage of the incident and interviewed witnesses. He went to Father's home to do a welfare check on the Child, along with a Yadkin County Sheriff's deputy. When Officer Rutledge and the deputy arrived at Father's home, Father reportedly allowed the deputy, but not Officer Rutledge, to do a welfare check on the Child.[1] Father also reportedly declined to write a statement for Officer Rutledge. According to Officer Rutledge, "[t]here did not seem to be any exigent circumstances [regarding the Child] at ... that particular time [,]" and he left with the deputy shortly thereafter.
Father took the Child to her primary care physician on 9 July 2014 for a physical abuse examination; the doctor reported that there was no "evidence of physical abuse" during the exam. Father was arrested by Officer Rutledge that same day and charged with misdemeanor child abuse as a result of the incident at the Dollar General store. YCHSA obtained non-secure custody of the Child in an order entered 10 July 2014.
Adjudicatory and dispositional hearings were held on 31 July 2014. During the hearing, Stephen Hutchens ("Mr.Hutchens"), a witness at the Dollar General store, testified he saw the Child wandering around the store and that Father
had called her back loudly, and I think he said a couple of cuss words at that point in time, [for instance "get [your] ass back over here,"] but she did come back to him. And then as they were standing there [in line], she worked her way around the checkout line toward a drink machine, and he stepped back there, and he did grab her by the hair and made the comment, "This will make you listen," and pulled her to him back into the line.... He grabbed her with his hand on the side of the head and pulled her, and it was quite obvious that it was painful for her.... A grimace came across her face.
Mr. Hutchens further testified that Father pulled the Child by the hair for "[t]wo to three feet" and that it lasted for "[j]ust a matter of two or three seconds[.]" Brittany Hawkins, the cashier at the Dollar General store during the incident, gave a similar account. Neither of these witnesses testified that Father spanked the Child.
Cathy Troutner ("Ms.Troutner"), a social worker with YCHSA who had worked with the Child's family in the past, also testified at the hearing. She summarized YCHSA's involvement with the Child's family going back to 2008. According to Ms. Troutner, she met with Father on 9 July 2014 at Father's request. Father discussed the incident with Ms. Troutner and reportedly stated to her that he pulled the Child by the hair because she was "tender headed" and thought it would "get her attention." He also reportedly acknowledged that he "needed some help and could do better" parenting the Child. As of the hearing, Father had signed up for parenting classes and had begun therapy.
In an order entered 6 August 2014 ("the order"), the trial court adjudicated that the Child was abused and neglected. Custody and placement authority was granted to YCHSA, and Father was granted visitation. Father appeals.
II. Standard of Review
The role of this Court in reviewing a trial court's adjudication of neglect and abuse is to determine "(1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact[.] The trial court's conclusions of law are reviewable de novoon appeal." In re K.J.D.,203 N.C.App. 653, 657, 692 S.E.2d 437, 441 (2010) (citations and internal quotation marks omitted).
III. Adjudication of Abuse
Father first argues that the trial court erred when it adjudicated that the Child was an abused juvenile. We agree. Pursuant to N.C. Gen.Stat. § 7B-101(1) (2013), in relevant part, an abused juvenile is defined as:
[a]ny juvenile less than 18 years of age whose parent, guardian, custodian, or caretaker:
a. Inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means;
b. Creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means; [or]
c. Uses or allows to be used upon the juvenile cruel or grossly inappropriate procedures or cruel or grossly inappropriate devices to modify behavior[....]
Although the trial court concluded that the Child was abused under N.C.G.S. § 7B-101(1)(c), we do not believe that the evidence in the present case would support an adjudication that the Child was abused under any of the above mentioned provisions in N.C.G.S. § 7B-101(1).[2]
Generally, this Court has held that the administration of corporal punishment is not abuse per se. See In re C.B.,180 N.C.App. 221, 221-22, 636 S.E.2d 336, 337 (2006), aff'd per curiam,361 N.C. 345, 643 S.E.2d 587 (2007). In In re C.B.,this Court found that a juvenile did not sustain a "serious physical injury" pursuant to N.C.G.S. § 7B-101(1)(a), and therefore was notabused, after receiving a spanking from his father that caused some temporary "bruis[ing] on [the boy's] right arm and the top part of his buttocks." Id.In the present case, the evidence and findings do not indicate that the Child sustained any physical injury as a result of Father's disciplinary measures, let alone any "serious" injury. Similarly, there is no indication in the record that the Child was ever at "a substantialrisk of [sustaining] seriousphysical injury" for that same conduct. SeeN.C.G.S. § 7B-101(1)(b) (emphasis added). Indeed, based on the record before us, we cannot say that the discomfort or risk of injury sustained by the Child after being pulled by the hair for several feet was any worse than the discomfort or risk of injury sustained by the child in In re C.B.
As for determining whether a juvenile is abused under N.C.G.S. § 7B-101(1)(c), regarding whether a parent used a "cruel or grossly inappropriate" procedure to modify a juvenile's behavior, this Court has recently published its first case interpreting this section. In In re H.H.,---N.C.App. ----, ----, 767 S.E.2d 347, 350 (2014), we determined that the respondent-mother diduse a "cruel or grossly inappropriate" procedure to modify her child's behavior when she "struck [her child] five times with a belt, [resulting in] multiple bruises on the inside and outside of his legs which were still visible the following afternoon" and where the child "described the discipline as 'a beating.' " Our analysis in In re H.H.also discussed three unpublished cases wherein children were found to have been abused under N.C.G.S. § 7B-101(1)(c). See id.(citing In re C.A.G.,--- N.C.App. ----, 754 S.E.2d 258 (2014) (unpublished) (the juvenile's grandmother, inter alia,threatened to force him to eat dog feces and once pointed a gun at him because he did not do his chores); In re K.A.,217 N.C.App. 641, 720 S.E.2d 461 (2011) (unpublished) (the juvenile's mother "forc [ed][him] to stand in a 'T-Shape,' which entailed holding his arms straight out by his side for up to five minutes at a time; plac[ed] duct tape over his mouth; and/or [struck] him with a belt, paddle, switch, or other object"); In re Simone,154 N.C.App. 520, 572 S.E.2d 443 (2002) (unpublished) (the juvenile's mother "hit [the juvenile] in the face with her hand and kicked [the juvenile] in the stomach" hard enough so that her stomach was still red one and one-half hours later)). In the present case, there is no indication in the record that the discipline exercised upon the Child in the Dollar General store was equal to or more severe than the discipline used in any of these cases.
In light of our analysis above, telling a child to "get [your] ass back over here" and pulling her by the hair for several feet may be, as Father concedes in his brief, "not an example of ideal parenting." However, we cannot say that this conduct rose to the level of causing the Child a "seriousphysical injury [,]" creating a "substantialrisk of seriousphysical injury[,]" or being "cruelor grosslyinappropriate[.]" SeeN.C.G.S. § 7B-101(1) (emphasis added). Therefore, the trial court erred by adjudicating that the Child was abused.
IV. Adjudication of Neglect
We next consider Father's argument that the trial court erred when it adjudicated that the Child was neglected. A "neglected juvenile" is defined in N.C. Gen.Stat. § 7B-101(15) (2013) as
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
To sustain an adjudication of neglect, the alleged conditions must cause the juvenile "some physical, mental, or emotional impairment, or create a substantial risk of such impairment[.]" In re Safriet,112 N.C.App. 747, 752, 436 S.E.2d 898, 901-02 (1993).
In the present case, YCHSA alleged in the petition that the Child was neglected on the grounds that she did "not receive proper care, supervision, or discipline" from Father and that she was living "in an environment injurious to [her] welfare." However, in the order, the trial court concluded only that the Child was "a neglected child pursuant to N.C.G.S. [§ ] 7B-101 in that she did not receive proper discipline from a parent." The facts supporting this allegation in the petition were that
YCHSA received a Child Protective Services report on [9 July 2014] concerning the [Child] and allegations of physical abuse and neglect. Concerns were that on the afternoon of [8 July 2014], [Father] was observed to forcefully pull his two[-]year-old child, [the Child], by the hair of her head inside the Dollar General in Boonville, NC. [Father] was also observed to have yelled and cursed at the child during the incident. It was also observed that [Father] took the [C]hild to the parking lot and began spanking her. Boonville Police Department [has] charged [Father] with Misdemeanor Child Abuse as a result of this incident and he has now been arrested. YCHSA has had a Child Protective Services history with [Father] in regard to [the Child] as well as another birth child.
However, there was no evidence presented at the hearing that Father "took the [C]hild to the [Dollar General store] parking lot and began spanking her." The other directly relevant fact that, on one occasion, Father pulled the Child's hair and yelled and cursed at her is insufficient to support an adjudication of neglect in the present case. Therefore, we reverse the order of the trial court.
REVERSED.
Judges STEPHENS and DAVIS concur.
Report per Rule 30(e).
Opinion
Appeal by Respondent from order entered 6 August 2014 by Judge Jeanie R. Houston in District Court, Yadkin County. Heard in the Court of Appeals 26 May 2015.

According to Officer Rutledge, he and Father have "an extensive history."

The other enumerated grounds defining abuse under N.C.G.S. § 7B-101(1) are irrelevant to the present case.