IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-452

No. COA22-38

Filed 5 July 2022

Cumberland County, No. 20JA111

IN THE MATTER OF: G.C., Juvenile.

Appeal by Respondent from order entered 19 October 2021 by Judge Cheri Siler Mack in Cumberland County District Court. Heard in the Court of Appeals 7 June 2022.

> *Patrick A. Kuchyt for Petitioner-Appellee Cumberland County Department of Social Services.*
>
> *Vitrano Law Offices, by Sean P. Vitrano, for Respondent-Appellant Father.*
>
> *McGuireWoods LLP, by Anita M. Foss, for guardian ad litem.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Respondent-Father appeals from the trial court's Adjudication and Disposition Order adjudicating his child, G.C. ("Glenda"),[1] a neglected juvenile. The Record reflects the following:

---

[1] A pseudonym stipulated to by the parties used for protection of the minor child and for ease of reading. *See* N.C. R. App. P. 42(b).

On 13 March 2020, Cumberland County Department of Social Services (DSS) filed a Petition alleging that Glenda was a neglected and dependent juvenile. The trial court held adjudication and disposition hearings on 27 August 2021. As part of the adjudication hearing, the parties submitted a written stipulation of facts focused primarily on the underlying facts of Respondent-Mother's previous cases with her two older children[2] and the death of Respondent-Parents' infant child Gary[3], Glenda's younger sibling.

On 19 October 2021, the trial court entered its Adjudication and Disposition Order adjudicating Glenda a "neglected juvenile within the meaning of N.C. Gen. Stat. § 7B-101(15), inasmuch as the juvenile did not receive proper care, supervision, or discipline from their parent, guardian, custodian, or caretaker, and the juvenile lived in an environment injurious to [her] welfare."[4] In this Order, the trial court made findings, based on the facts stipulated to by the parties, detailing Mother's previous DSS cases with the older children and her conviction of misdemeanor child abuse.

In particular, the trial court found: Glenda was approximately 1 ½ years old at

---

[2] Mother is not a party to this appeal.
[3] A pseudonym. *See* N.C. R. App. P. 42(b).
[4] The Order also noted DSS was dismissing the allegation G.C. was a dependent juvenile.

the time of the filing of the Petition.[5] Mother has two older children who were previously adjudicated abused, neglected, and dependent and have been in DSS custody since 28 December 2017.[6] On 6 November 2019, Mother was convicted of misdemeanor child abuse and placed on probation because of her actions with the two older children.

¶ 5 Gary was born in December 2019 to Respondent-Parents. On 12 March 2020, Mother was caring for Gary while Father was at work. Mother placed Gary in a " 'Pack n Play' and propped a bottle for him to feed[.]" Mother came in at one point to burp Gary, then placed him back in the "Pack n Play" on his side with several blankets. Approximately three hours later, Mother checked on Gary and found him unresponsive. Mother ran to the paternal grandmother's house who lived nearby, and the grandmother instructed Mother to call 911. Gary was pronounced dead at the scene. That day, Parents agreed to allow Glenda to temporarily live with her paternal grandmother.

¶ 6 In addition to these findings, the trial court also included as findings of fact:

> 29. Respondent Father and Respondent Mother have been instructed about proper sleeping arrangements for children.
>
> . . .

---

[5] Finding of Fact 16 contains an apparent typographical error as to G.C.'s birth date.
[6] Father is not the father of Mother's two older children.

32. That when the EMS arrived on the scene, they noticed the juvenile foaming from the nose and the mouth, indicative of asphyxiation.

33. That the Fayetteville Police Department incident report dated 3/12/20 stated, they noticed two used baby bottles and several blankets in the Pack 'n Play.

34. That the medical examiner's autopsy report on [Gary] dated 3/13/20, stated that *". . . sleeping in an environment with blankets while less than one year of age is a risk factor for an accidental asphyxial event. An asphyxial event cannot be ruled out based on the autopsy findings."* (Emphasis in original).

. . .

36. The evidence presented rises to the level of neglect pursuant to N.C. Gen. Stat. § 7B-101(15) in that the juvenile lived in an environment injurious to the juvenile's welfare; and that the juvenile does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian. Therefore, the juvenile is a neglected juvenile pursuant to N.C. Gen. Stat. § 7B-101(15).

The trial court concluded as a matter of law that Glenda was a neglected juvenile. In the Disposition portion of the Order, the trial court ordered Glenda remain in DSS custody and provided for visitation with Respondent-Parents. Father timely filed Notice of Appeal on 28 October 2021.

## **Issue**

The dispositive issue on appeal is whether the trial court's adjudicatory Findings of Fact support its Conclusion of Law that Glenda is a neglected juvenile.

I<small>N RE</small>: G.C.

2022-NCCOA-452

*Opinion of the Court*

### Analysis

Our review of an adjudication of neglect is constrained to whether the trial court's conclusions of law are supported by its findings of fact. *See In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984) (citation omitted). "[I]n a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." *In re J.A.M.*, 372 N.C. 1, 8, 822 S.E.2d 693, 698 (2019) (citations omitted). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *In re K.S.*, 380 N.C. 60, 2022-NCSC-7, ¶ 8. A trial court's adjudication of neglect is a conclusion of law that this Court reviews *de novo*. *Id.* at ¶ 8 (citation omitted); *In re W.C.T.*, 280 N.C. App. 17, 2021-NCCOA-559, ¶ 27 (citations omitted).

As an initial matter, as part of his broader challenge to the trial court's neglect adjudication, Respondent-Father challenges two of the trial court's findings: Findings of Fact 34 and 36. In Finding of Fact 34, the trial court recited[7] a portion of the Report of Autopsy Examination performed on Gary:

> 34. That the medical examiner's autopsy report on [Gary]

---

[7] *See In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (findings simply reciting the evidence presented at trial are not the required ultimate findings of fact). However, "[t]here is nothing impermissible about describing testimony, so long as the court ultimately makes its own findings, resolving any material disputes[.]" *In re A.E.*, 2021-NCSC-130, ¶ 18 (quoting *In re T.N.H.*, 372 N.C. at 408, 831 S.E.2d at 59).

dated 3/13/20, stated that *". . . sleeping in an environment with blankets while less than one year of age is a risk factor for an accidental asphyxial event. An asphyxial event cannot be ruled out based on the autopsy findings."* (Emphasis in original).

Specifically, Respondent-Father asserts this Finding "omits the Medical Examiner's conclusion that it was possible that Gary's death was caused by sudden infant death syndrome." Respondent-Father is correct the Medical Examiner's report also noted the findings "could be consistent with a diagnosis of sudden infant death syndrome." Indeed, the report concludes "the cause and manner of death are best classified as undetermined." However, we do not read Finding 34 as the trial court making any final determination of Gary's cause of death. We read it in context with the other findings that: Respondent-Parents had been instructed on proper sleeping arrangements for children; later, Gary was found unresponsive in the Pack 'n' Play with blankets; first-responders observed signs consistent with asphyxiation; and the Medical Examiner noted such a sleeping environment at less than one year old was a risk factor for asphyxiation and thus could not be ruled out as a cause of death. Taken together, these Findings tend to show Respondent-Parents caused Gary to be in an injurious environment at the time of his death.

¶ 11        Finding 36 states:

>       36. The evidence presented rises to the level of neglect
>       pursuant to N.C. Gen. Stat. § 7B-101(15) in that the
>       juvenile lived in an environment injurious to the

> juvenile's welfare; and that the juvenile does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian. Therefore, the juvenile is a neglected juvenile pursuant to N.C. Gen. Stat. § 7B-101(15).

Although denominated as a Finding of Fact by the trial court, "[t]he determination of neglect requires the application of the legal principles set forth in [the neglect statute] and is therefore a conclusion of law." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675-76 (1997). Because this Finding is more properly designated a Conclusion of Law, we treat it as such for the purposes of this appeal. *Id.* In so doing, we review it in connection with the trial court's denominated Conclusion of Law 2 that Glenda "is a neglected juvenile" and its decree Glenda "is hereby adjudicated a neglected juvenile[.]"

¶ 12 Respondent-Father argues the trial court erred in making these legal conclusions and adjudicating Glenda as neglected because "Mother's previous cases and convictions of misdemeanor child abuse involving her other children do not support an adjudication of current or future neglect as to Glenda." DSS, for its part, "does not take a position" on whether the trial court's Findings support its neglect adjudication. The Guardian ad Litem, however, contends the Findings of Fact do support an adjudication of neglect.

¶ 13 A "[n]eglected juvenile" is defined, in relevant part, as "[a]ny juvenile less than 18 years of age . . . whose parent, guardian, custodian, or caretaker . . . [d]oes not

provide proper care, supervision, or discipline . . . [or] [c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15) (2021). Relevant to the determination of a neglected juvenile is "whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." *Id.*

¶ 14 "The neglect statute 'neither dictates how much weight should be given to a prior neglect adjudication, nor suggests that a prior adjudication is determinative.' " *In re J.A.M.*, 372 N.C. at 9, 822 S.E.2d at 698 (quoting *In re A.K.*, 360 N.C. 449, 456, 628 S.E.2d 753, 757 (2006)). " 'Rather, the statute affords the trial judge some discretion in determining the weight to be given such evidence.' " *Id.* (quoting *In re Nicholson*, 114 N.C. App. 91, 94, 440 S.E.2d 852, 854 (1994). However, "[a] court may not adjudicate a juvenile neglected solely based upon previous Department of Social Services involvement relating to other children." *Id.*

¶ 15 "Rather, in concluding that a juvenile 'lives in an environment injurious to the juvenile's welfare,' N.C.G.S. § 7B-101(15), the clear and convincing evidence in the record must show current circumstances that present a risk to the juvenile." *Id.* Indeed, our Courts have "additionally 'required that there be some physical, mental, or emotional impairment of the juvenile *or a substantial risk of such impairment* as a consequence of the failure to provide "proper care, supervision, or discipline" ' in

order to adjudicate a juvenile neglected." *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) (quoting *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901–02 (1993)) (emphasis in original). "[A] prior and closed case with other children . . . *standing alone*, cannot support an adjudication of current or future neglect." *In re J.A.M.* 372 N.C. at 9, 822 S.E.2d at 699 (internal quotations omitted) (citation omitted) (emphasis in original). "Instead, we 'require[ ] the presence of other factors to suggest that the neglect or abuse will be repeated.' " *Id.* at 9–10, 822 S.E.2d at 699 (quoting *In re J.C.B.*, 233 N.C. App. 641, 644, 757 S.E.2d 487, 489 (2014)).

¶ 16        Likewise, this Court has recognized that in determining whether a juvenile is neglected based on prior abuse or neglect of other children by an adult who regularly lives in the home: "The decision of the trial court regarding whether the other children in the home are neglected, 'must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case.' " *In re S.M.L.*, 272 N.C. App. 499, 515 , 846 S.E.2d 790, 801 (2020) (quoting *In re McLean*, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999)). "If the trial court relies on instances of past abuse or neglect of other children in adjudicating a child neglected, the court is required to find 'the presence of other factors to suggest that the neglect or abuse will be repeated.' " *Id.* at 516, 846 S.E.2d at 801 (quoting *In re J.C.B.*, 233 N.C. App. 641, 644, 757 S.E.2d 487, 489 (2014)).

¶ 17        In this case, the trial court made no finding or determination Glenda suffered any physical, mental, or emotional impairment or that Glenda was at a substantial risk of such impairment as a consequence of any failure to provide proper care, supervision, or discipline to support the adjudication of Glenda as a neglected juvenile. *See In re: J.A.M.*, 372 N.C. at 9, 822 S.E.2d at 698. Instead, the existing Findings show the trial court adjudicated Glenda neglected solely based on its findings of the prior DSS involvement with Respondent-Mother's older children and the circumstances surrounding the death of Respondent-Parent's infant son Gary. Crucially, as in *In re S.M.L.* and *In re J.C.B.* and unlike in *J.A.M.,* the trial court failed to find "the presence of other factors" indicating a present risk *to Glenda* when it reached its conclusion that *Glenda* was neglected as a matter of law. *See id*. at 10, 822 S.E.2d at 698. Thus, the trial court's Findings do not support its Conclusion adjudicating Glenda as a neglected juvenile. Therefore, the trial court erred in adjudicating Glenda as a neglected juvenile. Consequently, the trial court's Adjudication and Disposition Order must be vacated and this matter remanded to the trial court to determine whether facts supporting an adjudication of neglect may be found by clear and convincing evidence on the existing record.[8] If so, the trial court

---

[8] We acknowledge the majority of the trial court's key evidentiary findings at adjudication are grounded in the stipulated facts and, as a result, there is a limited evidentiary record for the trial court to draw upon in making additional findings.

should enter a new adjudication of neglect supported by such Findings of Fact and then proceed to a new disposition hearing. If not, the trial court should dismiss the Petition.

## **Conclusion**

¶ 18        Accordingly, for the foregoing reasons, we vacate the trial court's Adjudication and Disposition Order and remand this matter to the trial court for a determination of whether additional adjudicatory findings may be made on the existing record as set forth above.

VACATED AND REMANDED.

Judge INMAN concurs.

Judge GRIFFIN dissents.

GRIFFIN, Judge, dissenting.

It is clear from our precedent that previous DSS involvement with other children is not by itself a sufficient basis to adjudicate a juvenile neglected and that, "[i]nstead, we require [] the presence of other factors to suggest that the neglect . . . will be repeated." *Matter of J.A.M.*, 372 N.C. at 9–10, 822 S.E.2d at 699 (citation and internal quotation marks omitted). Contrary to the majority's position, while the trial court made findings relating to Mother's older children's adjudications of abuse, neglect, and dependent "based on one of the children [being] severely malnourished because [Mother] and those children's father failed to feed the child[,] [and] [t]hat child also had bruises on him[,]" this was not the sole basis of its determination of neglect. Rather, the "other factors" that the court relied on were the specific findings relating to the circumstances of Gary's death, a child who DSS had no previous involvement with, under Mother's supervision, in the home that Glenda also resided in. In relation to Gary' death, the trial court found:

> 29. Respondent Father and Respondent Mother have been instructed about proper sleeping arrangements for children.
>
> . . .
>
> 32. That when the EMS arrived on the scene, they noticed the juvenile foaming from the nose and the mouth, indicative of asphyxiation.
>
> 33. That the Fayetteville Police Department incident

> report dated 3/12/20 stated, they noticed two used baby
> bottles and several blankets in the Pack 'n Play.
>
> 34. That the medical examiner's autopsy report on [Gary]
> dated 3/13/20 stated that ". . . sleeping in an environment
> with blankets while less than one year of age is a risk factor
> for an accidental asphyxial event. An asphyxial event
> cannot be ruled out based on the autopsy findings."

(Emphasis in original). The trial court's findings reflect that Mother has not only had

previous issues with neglecting her older children, but now, under the current

circumstances that Glenda resided in, a child died under Mother's supervision. These

findings taken together "suggest that the neglect . . . will be repeated." *Matter of

J.A.M.*, 372 N.C. at 9–10, 822 S.E.2d at 699 (citation and internal quotation marks

omitted).

¶ 20        Additionally, while the trial court did not make a specific finding that Glenda

was at a substantial risk of harm due to a failure to provide proper care, supervision,

or discipline, this Court has concluded that such a finding is unnecessary where it is

clear from the evidence. *Matter of K.S.*, 380 N.C. 60, 2022-NCSC-7, ¶ 9; *Matter of

Safriet*, 112 N.C. App. 747, 753, 436 S.E.2d 898, 902 (1993) ("Although the trial court

failed to make any findings of fact concerning the detrimental effect of [the mother]'s

improper care on [the juvenile]'s physical, mental, or emotional well-being, all the

evidence supports such a finding." (citation omitted)). Consistent with the analysis

above, the evidence is clear that Glenda is at a substantial risk of harm in the Parents'

home based upon the trial court's findings about Mother's older children, showing a history of neglecting children, and the findings detailing the circumstances around Gary's death, evidencing current issues with supervision and care in Parents' home.

For these reasons, I respectfully dissent.