An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-626

Filed 2 July 2025

Pitt County, No. 21JA000008-730

IN THE MATTER OF: A.B.W.-H.

Appeal by Respondent-Mother from Orders entered 15 April 2024 and 26 April 2024 by Judge Lee F. Teague in Pitt County District Court. Heard in the Court of Appeals 20 March 2025.

> *Parent Defender Wendy C. Sotolongo, by Deputy Parent Defender Annick Lenior-Peek, for Respondent-Appellant Mother.*
>
> *Miller & Audino, LLP, by Jay Anthony Audino, for Petitioner-Appellee Pitt County Department of Social Services.*
>
> *Matthew D. Wunsche for Guardian ad litem.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Respondent-Mother appeals from an Adjudication Order entered 15 April 2024

adjudicating Amari[1] a neglected juvenile and from a Disposition Order entered 26 April 2024 continuing Pitt County Department of Social Services' (DSS) custody of the juvenile. The Record before us tends to reflect the following:

On 14 January 2024, law enforcement received a 911 call about an infant found near a dumpster. The infant had reportedly been found by Respondent-Mother, a fifteen-year-old high school freshman, while she was taking out the trash. The infant was found wrapped in a sweater, with her umbilical cord still attached, and not wearing a diaper or clothing. Law enforcement contacted emergency medical services who took the baby to the hospital, where the infant remained for the next ten days. Law enforcement also contacted DSS, explained the circumstances under which the infant was found, and alleged Respondent-Mother and her mother (Maternal Grandmother) "were acting very weird."

Immediately thereafter, DSS initiated an investigation. During an interview with a social worker, Respondent-Mother admitted she had given birth to the baby, Amari, on 12 January 2024—two days prior. For approximately the first thirty-six hours of Amari's life, Respondent-Mother kept Amari hidden in her room, feeding and caring for her in secret. Once she became concerned about Amari's nutrition and medical care, Respondent-Mother brought Amari outside with her to the dumpster and fabricated the story about finding her there. Respondent-Mother indicated she

---

[1] A pseudonym agreed upon by the parties.

only went outside to pretend she found the baby—she never put the infant down or left her alone outside. Respondent-Mother claimed to have hidden the entirety of her pregnancy from her family because she was scared.[2] The only person Respondent-Mother had revealed her pregnancy to was Respondent-Father, who was unsupportive.

DSS filed a Petition alleging Amari was a dependent and neglected juvenile and requesting nonsecure custody, which was granted that same day.[3] After a hearing on 18 January 2024 on the continued need for nonsecure custody, the trial court ordered Respondent-Father submit to a paternity test, the results of which indicated he was Amari's biological father. The trial court ordered DSS to complete initial kinship provider assessments on each Parent and their homes. The trial court later ordered DSS to conduct a home study on Respondent-Mother's grandmother's home as well.[4]

Respondent-Father and his mother's (Paternal Grandmother) kinship provider assessment was approved. Respondent-Mother and Maternal Grandmother's assessment was not approved; DSS had concerns about Maternal Grandmother's

---

[2] Respondent-Mother lives at home with her mother and five younger siblings.

[3] DSS submitted its Petition on 14 January 2024, the same day law enforcement was contacted and DSS initiated its investigation. The Petition was not formally filed until two days later, on 16 January 2024.

[4] Respondent-Mother's grandmother is not biologically related to Respondent-Mother or Maternal Grandmother but cared for Maternal Grandmother since Maternal Grandmother was a young age.

prior and ongoing involvement with child protective services, as well as a recent eviction. The home study on Respondent-Mother's grandmother's home was approved, but DSS expressed a desire to place Amari with Respondent-Father over Respondent-Mother's grandmother so that Amari would be placed with a parent rather than a non-relative.

On 15 April 2024, the trial court adjudicated Amari a neglected juvenile under N.C. Gen. Stat. § 7B-101(15) but not a dependent juvenile. On 26 April 2024, the trial court entered a Disposition Order authorizing Amari's placement with Respondent-Father and Paternal Grandmother and continuing DSS custody of Amari. The trial court also ordered Respondent-Mother to have supervised visits with Amari once a week for a minimum of two hours per visit. On 26 April 2024, Respondent-Mother timely filed Notice of Appeal.

## Issue

The dispositive issue on appeal is whether the trial court erred in adjudicating the minor child a neglected juvenile.

## Analysis

We review an adjudication under N.C. Gen. Stat. § 7B-807 to determine whether the trial court's findings of fact are supported by "clear and convincing competent evidence" and whether the trial court's findings, in turn, support its conclusions of law. *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) (citations omitted). "Clear and convincing evidence is evidence which should fully

convince." *In re J.A.G.*, 172 N.C. App. 708, 712, 617 S.E.2d 325, 329 (2005) (citation and quotation marks omitted). "If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary." *In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (citation omitted), *aff'd on other grounds*, 362 N.C. 446, 665 S.E.2d 54 (2008). Unchallenged findings of fact are "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citations omitted). "The conclusion that a juvenile is abused, neglected, or dependent is reviewed *de novo*." *In re V.B.*, 239 N.C. App. 340, 341, 768 S.E.2d 867, 868 (2015) (citation omitted).

A. *Findings of Fact*

Respondent-Mother contends the trial court's Findings of Fact are "inconsistent in that in some aspects the findings rely on [Respondent-Mother's] and [Maternal Grandmother's] statements, and in others it paints their statements as unreliable." For example, as to Finding 10, Respondent-Mother contests the trial court's use of the word "claims" to characterize her statement:

> (10) Respondent Minor Mother claims no one in the household knew about her pregnancy; she never told her mother because she was scared. After giving birth in her room on Friday, January 12th, she put the baby in the closet on blankets. No one heard the baby crying in the home and the baby slept all day on Saturday, January 13th and breastfed every two hours.

Similarly, as to Finding 12, Respondent-Mother contests the trial court's use of the word "reports":

(12) Respondent Minor Mother had no diapers for the baby, but reports that she breastfed the baby.

Respondent-Mother argues "no evidence contradicts [the findings]." Thus, Respondent-Mother does not dispute the substance of the Findings; to the contrary, Respondent-Mother argues these Findings are factually correct. Therefore, to the extent the trial court expressed skepticism with its word choice, we conclude it is irrelevant to the underlying substance of the Findings. Because Respondent-Mother does not challenge the substance of the Findings, they are binding on appeal. *See In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58 (citations omitted).

B. *Conclusions of Law*

Respondent-Mother argues the trial court's Findings of Fact do not support its Conclusion Amari is a neglected juvenile under N.C. Gen. Stat. § 7B-101(15). "In general, treatment of a child which falls below the normative standards imposed upon parents by our society is considered neglectful." *In re Thompson*, 64 N.C. App. 95, 99, 306 S.E.2d 792, 794 (1983). "Generally, North Carolina courts have found neglect where 'the conduct at issue constituted either severe or dangerous conduct or a pattern of conduct either causing injury or potentially causing injury to the juvenile.' " *In re V.M.*, 273 N.C. App. 294, 297, 848 S.E.2d 530, 533 (2020) (quoting *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003)). Moreover, "this Court has consistently required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure

to provide 'proper care, supervision, or discipline.' " *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (quoting *In re Thompson*, 64 N.C. App. at 101, 306 S.E.2d at 796). "Where there is no finding that the juvenile has been impaired or is at substantial risk of impairment, there is no error if all the evidence supports such a finding." *In re Padgett*, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003) (citing *In re Safriet*, 112 N.C. App. at 753, 436 S.E.2d at 902). "With newborns, 'the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case.' " *In re K.C.*, _ N.C. App. _, _, 905 S.E.2d 776, 781 (2024) (quoting *In re McLean*, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999)).

This Court in *In re V.M.* reversed an adjudication of a juvenile as neglected where the trial court's determination was based on one isolated incident of neglect. There, the minor child was accidentally fed baby formula mixed with alcohol. *In re V.M.*, 273 N.C. App. at 295, 848 S.E.2d at 532. In reversing, we explained: "The findings, such as they are, support a determination that a tragic and unfortunate accident occurred here—an accident which might have been preventable with the benefit of hindsight, but which respondent-mother had no way of knowing would occur, nor any means to prevent it, absent some form of precognition." *Id.* at 300, 848 S.E.2d at 535.

Similarly, in *In re Stumbo*, the trial court concluded the minor child was neglected on the basis of a social worker's testimony they had received a singular,

anonymous report that "someone had saw a two-year old naked child in the [parents'] driveway unsupervised." 357 N.C. at 282, 582 S.E.2d at 257. This Court affirmed, and our Supreme Court reversed, noting "not every act of negligence on the part of parents or other care givers constitutes 'neglect' under the law and results in a 'neglected juvenile.' " *Id.* at 283, 582 S.E.2d at 258. The Court explained: "On this record, we have a report of a circumstance that probably happens repeatedly across our state, where a toddler slips out of a house without the awareness of the parent or care giver—no matter how conscientious or diligent the parent or care giver might be. While no one wants that to happen, such a lapse does not in and of itself constitute 'neglect' under N.C.G.S. § 7B-101." *Id.* at 288-89, 582 S.E.2d at 261.

Here, the trial court concluded Amari was a neglected juvenile on the grounds that her parent, guardian, custodian, or caretaker did not provide proper care, supervision, or discipline and on the grounds that her parent, guardian, custodian, or caretaker had abandoned her. *See* N.C. Gen. Stat. § 7B-101(15)(a), (b) (2023). In support of this Conclusion, the trial court made the following Findings:

> (8) . . . [Respondent-Mother] admitted that she gave birth to the baby in her bedroom on Friday, January 12, 2024.
>
> (9) According to the Respondent Minor Mother, on Friday, January 12, 2024, she was lying in bed in pain. She began to push and the baby came out. She reports that she tried to cut the umbilical cord, wrapped the baby in a blanket, and went to the bathroom where she released the placenta . . . .
>
> (10) . . . After giving birth in her room on Friday, January 12th, she put the baby in the closet on blankets. No one heard the baby

crying in the home and the baby slept all day on Saturday, January 13th and breastfed every two hours.

(11) Respondent Mother set alarms every two hours to breastfeed which she learned from having to care for her younger siblings.

(12) Respondent Minor Mother had no diapers for the baby, but reports that she breastfed the baby.

(13) Respondent Mother did go to the store with her mother, [Maternal Grandmother], on Saturday morning to buy pads according to [Maternal Grandmother's] statements to police.

(14) Respondent Minor Mother claims she took the baby outside on Sunday morning, January 14, 2024 while taking the trash out and started texting her mother as if she found the baby at the dumpster. She never put the baby anywhere while outside for a minute or two before returning inside with the baby.

(15) Respondent Mother made up the dumpster story because she reported being concerned for the Juvenile's nutrition.

(16) During the Petitioner's interview with the Maternal Grandmother, she confirmed that she was not aware that the Respondent Mother was pregnant, or that she had given birth. She reported to the police that she had been in and out of Respondent Mother's room over the weekend and never noticed anything out of the ordinary.

(17) The Juvenile received medical care after law enforcement was involved. Respondent Mother received medical care after the Petitioner became involved.

These Findings do not support a Conclusion Respondent-Mother failed to provide proper care or supervision of Amari. "Had the court engaged in more detailed analysis, offered additional factual findings, explained what steps respondent-mother could or should have taken, determined that the danger was in some way foreseeable,

or even just offered more than a token conclusion, we might be able to uphold such a determination." *In re V.M.*, 273 N.C. App. at 300, 848 S.E.2d at 535. Importantly, the trial court did not find Amari suffered "some physical, mental, or emotional impairment," or that there was "a substantial risk of the same." *See id.* at 299, 848 S.E.2d at 534 (quotation marks omitted). Nor does the evidence support a finding Amari was at a substantial risk of harm in Respondent-Mother's care. At most, the trial court's Findings indicate Respondent-Mother hid her pregnancy, gave birth alone, and did not have diapers for Amari. DSS argues the fact that Amari required medical care is evidence of Respondent-Mother's neglect. However, the trial court did not find that Amari's condition would have been different if Respondent-Mother had given birth under different circumstances. Nor did it find Respondent-Mother's behavior fell "below the normative standards imposed upon parents by our society." *See id.* (quotation marks omitted).

In fact, the evidence tends to show Amari ultimately received the care she needed because Respondent-Mother sought it out for her. While the minor Respondent-Mother might not have taken the most reasonable steps toward doing so, "not every act of negligence on the part of parents or other care givers constitutes 'neglect' under the law and results in a 'neglected juvenile.' " *In re Stumbo*, 357 N.C. at 283, 582 S.E.2d at 258. Indeed, as in *In re Stumbo*, this case proceeded on reports of neglect which were ultimately unsubstantiated. Thus, the adjudication of neglect based on improper care or supervision cannot stand.

Moreover, there was insufficient evidence to adjudicate Amari neglected on the basis she was abandoned. "Abandonment has been defined as [willful] neglect and refusal to perform the natural and legal obligations of parental care and support. It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and [willfully] neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 427 (2003) (citing *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962)). At the time DSS filed its Petition, it was aware the story about Amari being found near a dumpster was false. DSS did not present any evidence tending to show Respondent-Mother willfully neglected Amari at any point. To the contrary, the evidence shows Respondent-Mother fed and cared for Amari after her birth and eventually sought assistance when she became concerned about Amari's nutrition. Thus, we cannot agree the evidence supports an adjudication of neglect based on abandonment.

Therefore, the trial court's Findings do not support its Conclusion Amari was a neglected juvenile pursuant to N.C. Gen. Stat. § 7B-101(15). Consequently, based on the lack of evidence to support the allegations in the Petition and the trial court's limited Findings, we reverse the trial court's adjudication of neglect. Because we

reverse the adjudication,[5] we also reverse the trial court's Disposition Order.  *See In re S.C.R.*, 217 N.C. App. 166, 170, 718 S.E.2d 709, 713 (2011).

## **Conclusion**

Accordingly, for the foregoing reasons, we reverse the trial court's Adjudication and Disposition Orders.


REVERSED.

Judges GORE and MURRY concur.

Report per Rule 30(e).

---

[5] In light of our conclusion the evidence would not support findings sufficient to sustain an adjudication of neglect, we do not remand to the trial court for additional findings.  *See Harnett Cnty. ex rel. De la Rosa v. De la Rosa*, 240 N.C. App. 15, 25, 770 S.E.2d 106, 113-14 (2015); *see also* N.C. Gen. Stat. § 7B-807(a) (2023) ("If the court finds that the allegations have not been proven, the court shall dismiss the petition with prejudice[.]").